**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| **BETTY WEIR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case #5:20-CV-05206-TLB** |
| | ) | |
| **LINCOLN LIFE INSURANCE COMPANY OF BOSTON F/K/A/ LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**AMENDED COMPLAINT FOR THE RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA**

The Plaintiff, BETTY WEIR (WEIR) sues the Defendants, LINCOLN LIFE INSURANCE COMPANY OF BOSTON F/K/A/ LIBERTY LIFE ASSURANCE COMPANY OF BOSTON (LIBERTY) and states:

**Jurisdiction and Venue**

1. This is an action for relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq. This Court has jurisdiction pursuant to 28 U.S.C. §1337 and ERISA § 502(e), 29 U.S.C. § 1132(e).

2. LIBERTY is an insurance company licensed to transact business in Arkansas, which is or was at all relevant times engaged in business in Washington and Benton County, Arkansas within this District.

3. WEIR lived and worked in Arkansas – Washington and Benton County.

4. Venue is proper within the Western District of Arkansas pursuant to 29 U.S.C. §1132(e)(2).

## Governing Plan and ERISA Standard of Review

**The Plan:**

5. WEIR is and/or was a participant in each of the plans, funds, programs, or arrangements described herein, or in the alternative, was at all times relevant a participant in each of the plans, funds, programs, or arrangements described herein.

6. WEIR is a former employee of J.B. Hunt Transportation Services, Inc (J.B. Hunt).

7. At all relevant times, WEIR was a participant in an employee benefit plan (hereafter referred to as "the Plan") sponsored by J.B. Hunt which provided disability benefits to participants.

**Plan Funding & ERISA Standard of Review – De Novo:**

8. J.B. Hunt funded its Plan by purchasing a group policy of insurance (policy # GF3-860-066830-01) underwritten by LIBERTY. A copy of this policy is attached hereto Exhibit "A" and is incorporated by reference.

9. The group policy (Exhibit A) was drafted in its entirety by LIBERTY.

10. The group policy (Exhibit A) is a contract of adhesion.

11. LIBERTY and J.B. Hunt use the group insurance policy (Exhibit A) as both the Plan document and Summary Plan Description (SPD).

12. No other plan documents exist other than the group insurance policy (Exhibit A).

13. No originating plan document exists which instituted the J.B. Hunt Disability Plan.

14. No originating plan document or other document exists in which J.B. Hunt reserved any discretionary authority to itself in relation to the Plan.

15. The employees or agents of J.B. Hunt and LIBERTY did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority from J.B. Hunt to LIBERTY before purchasing the group insurance policy (Exhibit A) to fund the Plan.

16. The employees or agents of J.B. Hunt and LIBERTY did not discuss or correspond about the existence, meaning, or significance of the process required to delegate discretionary authority from J.B. Hunt to LIBERTY before purchasing the group insurance policy (Exhibit A) to fund the Plan.

17. At the inception of the Plan, J.B. Hunt did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to purchase an insurance policy to fund the Plan.

18. At the time it purchased the group disability insurance policy (Exhibit A) from LIBERTY, J.B. Hunt did not have any discretionary authority which it could delegate to an insurance company.

19. The group disability insurance policy (Exhibit A) was drafted entirely by LIBERTY.

20. No document prepared by J.B. Hunt delegates any discretionary authority to LIBERTY.

21. De novo review applies to this action because of one of the following:

a. Neither LIBERTY were delegated discretionary authority such that its claim decision is entitled to a discretionary review or arbitrary and capricious standard of review, because or one or more of the following:

   i. J.B. Hunt never had the authority to delegate discretion to LIBERTY or following the inception of the Plan;

   ii. The group insurance policy (Exhibit A) is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

   iii. If it had power to delegate discretion, J.B. Hunt did not properly delegate discretionary authority over claims decisions to LIBERTY

**Conflict Must be Considered:**

22. LIBERTY pays claims from its own general assets as the claims decision maker and funder of the group insurance policy (Exhibit A).

23. LIBERTY is the Plan's claims administrator, handling claims under the insurance policy (Exhibit A).

24. Any claims paid under the group insurance policy (Exhibit A), are paid by LIBERTY entirely from LIBERTY's assets.

25. No assets of J.B. Hunt are used to pay claims under the group insurance policy (Exhibit A).

26. If this Court determines that de novo review does not apply to this matter, any conflict on the part of either defendant must be weighed in relation the actions or opinions of either Defendant's employees, agents or experts, to include but not be limited to:

a. assessing the impact of the conflict on whether a full and fair review was provided, and/or

b. decreasing the weight afforded by the court to the opinions or actions of Defendants' employees or hired experts that are contained in the ERISA Record.

27. Defendants have acted under a policy to take advantage of the potential applicability of ERISA to claims.

28. The Defendants' decision-making process violated ERISA by failing to give the Plaintiff a full and fair review of the claim.

29. The Defendants' decision-making process violated the terms of the applicable ERISA Plans and ERISA law and regulations.

## The Short Term Disability Benefit Claim

30. WEIR worked as an Director of Operations at J.B. Hunt

31. WEIR made a claim for Short Term Disability benefits under the Plan after she was forced to cease working due to a combination of impairments stemming from chronic neck pain, left shoulder pain, hip pain, low back pain, chronic left knee pain with degenerative arthritis and post-menopausal side effects to include bleeding.

32. WEIR's last date of work was August 26, 2016.

33. LIBERTY administered the Short Term Disability Plan and determined that WEIR was disabled under that Plan and paid all Short Term Disability benfefits to her through the plan/policy duration until February 21, 2017.

## The Long Term Disability Benefit Claim

34. WEIR then applied for Long Term Disability benefits.

35. Defendants paid WEIR her Long Term Disbaility benefits through May 14, 2019.

36. WEIR's benefit were terminated in a letter from Defendants dated May 15, 2019.

37. As a basis for denying benefits, Defendants stated WEIR did not meet the definition of disability.

38. The LIBERTY policy which funds the Long Term Disability Plan states the following definition of "disability:"

*"Disability" or "Disabled" means:*
*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

*Applicable to Class 1:*

*a. i. if the Covered Person is eligible for the 24 Month Own Occupation benefit,*
*"Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.*

39. WEIR filed a timely pre-suit appeal with Defendants within the 180 day appeal period on May 21, 2019.

40. WEIR has not been released back to work from her physciains and continues to seek treatment for her chronic conditions.

41. WEIR submitted to LIBERTY restrictions and limitations from her treating providers Mark Olsen, M.D. and James Blakenship, M.D.

42. WEIR remains disabled and eligible to receive benefits within the terms of the Plan.

43. On August 6, 2019 LIBERTY issued a decision upholding the termination of WEIR's Long Term Disability Benefits claim.

44. With respect to all claims made herein, WEIR exhausted all administrative remedies by pursuing all necessary pre-suit appeals required under the plan and 29 C.F.R. §2560.503-1.

**Benefits in Controversy**

45. WEIR is entitled to Long Term Disability benefits under the Plan since May 14, 2019 through the date of filing this action, as she has met the definition of disability based upon restrictions and limitations related to her impairments.

46. Benefits under the group disability insurance policy (Exhibit A) are calculated at a rate of 60 % of WEIR'S gross basic monthly earnings.

47. WEIR yielding a gross monthly benefit payment of $2391.03.

48. As of the date of filing this action, LIBERTY owes WEIR a total of 18.67 monthly benefit payments at the rate of $2391.03, an aggregate sum of $45,971.48.

49. WEIR is entitled to benefits herein because:

a) The benefits are permitted under the Plan.

b) She has satisfied all conditions to be eligible to receive the benefits.

c) She has not waived or otherwise relinquished entitlement to the benefit.

50. Each monthly benefit payment owed since May 14, 2019 is a liquidated sum and became liquidated on the date the payment was due and payable. Plaintiff seeks pre-judgment interest on each such payment.

51. Pursuant to ERISA §502(g), 29 U.S.C. §1132(g), WEIR is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA. Plaintiff has been required to obtain the undersigned attorney to represent her in this matter and has agreed to a reasonable attorney fee as compensation to him for his services.

WHEREFORE, the Plaintiff, WEIR, asks this Court to enter judgment against the Defendants, LIBERTY, finding that:

1) The Plaintiff is entitled to Long Term Disability benefits from May 14, 2019 through the filing of this lawsuit or such other date to be established by this Court; and
2) Awarding benefits in the amount not paid to the Plaintiff from May 14, 2019 to the date of filing this lawsuit or such other date determined by this Court (as of filing this action, a total of $42,845.18) together with pre-judgment interest at the legal rate on each monthly payment from the date it became due until the date it is paid, and declare entitlement to any additional benefits owed to Plaintiff from the time of filing this Complaint to the time of Judgment in this action; and
3) Award reasonable attorney fees and costs incurred in this action; and

4) For such other and further relief as this Court deems just and proper, including but not limited to:

   a. a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits, and

   b. remanding Plaintiff's claim to the Plan Administrator for further action to address continuing benefits after the final date of benefits awarded by this Court, and

   c. ordering Defendant to advise Plaintiff's former employer or any other necessary entity that benefits in this action were properly paid through the date of this Court's Order awarding benefits for purposes of coordinating or reinstating any ancillary benefits which should properly be paid or for which coverage should be awarded as a result of Plaintiff's receipt of disability benefits under the Plan.

DATED this 9th day of March 2021.

/s/ William C. Demas
WILLIAM C. DEMAS, ESQUIRE
Florida Bar #0142920
Demas@TuckerLawGroup.com
Tucker Law Group, P.A.
5235 16th Street North
St. Petersburg, FL 33703
(727) 572-5000 (Phone)
(727) 571-1415 (Fax)

Attorney for Plaintiff,
BETTY WEIR